E-FILED | 7/3/2024 1:34 PM
CC-20-2024-C-520
Kanawha County Circuit Clerk
Cathy S. Gatson

**IN THE CIRCUIT COURT FOR KANAWHA COUNTY, WEST VIRGINIA**

| | |
|---|---|
| BRANDON MITCHELL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **CIVIL ACTION NO. CC-20-2024-C-520** |
| | ) **Judge Kenneth Ballard** |
| ALLEN COMPANY, INC, THE ALLEN | ) |
| COMPANY, INC., WAL-MART STORES | ) |
| EAST, LP and Fictitious Parties A, B, C, D, E | ) |
| and F whether singular or plural, being those | ) |
| individuals or entities that owned, | ) |
| maintained, serviced, manufactured, | ) |
| designed, transported or was otherwise | ) |
| responsible for the Allen Krypto Arrows | ) |
| whose true and correct names are unknown to | ) |
| Plaintiff at this time or their identities as | ) |
| proper party defendants are unknown to the | ) |
| Plaintiff at this time, but will be substituted by | ) |
| amendment when ascertained, | ) |
| | ) |
| **Defendants.** | ) |

**SECOND AMENDED COMPLAINT**

COMES NOW, Brandon Mitchell, Plaintiff in the above-styled action, and files his Complaint against ALLEN COMPANY, INC, THE ALLEN COMPANY, INC., WAL-MART STORES EAST, LP and Fictitious Parties A, B, C, D, E, and F and, in support thereof, states as follows:

**PARTIES**

1. Brandon Mitchell is an individual above the age of nineteen (19) and is a resident of Kanawha County, West Virginia

2. Allen Company, Inc (hereinafter "Allen") is and was, at all times pertinent hereto, a foreign corporation established pursuant to the laws of Colorado.

**EXHIBIT A**

1

3.     At all times relevant hereto, Plaintiff further believes and alleges that Allen was not authorized to do business in, but was doing business in, Kanawha County, West Virginia.

4.     The Allen Company, Inc. (hereinafter "The Allen") is and was, at all times pertinent hereto, a foreign corporation established pursuant to the laws of Colorado.

5.     At all times relevant hereto, Plaintiff further believes and alleges that The Allen was not authorized to do business in, but was doing business in, Kanawha County, West Virginia.

6.     Wal-Mart, Stores East, LP (hereinafter "Walmart") is a foreign corporation authorized to do business and doing business in Kanawha County, West Virginia and/or regularly did or solicited business or engaged in other persistent courses of conduct or derived substantial revenue from goods used or consumed or services rendered in Kanawha County, West Virginia.

7.     Fictitious Parties A, B, C, D, E, and F whether singular or plural, being those individuals or entities that owned, maintained, serviced, manufactured, designed, transported or were otherwise responsible for the Allen and/or The Allen Kryptos carbon fiber arrows caused the injury to Plaintiff on July 24, 2022 whose true and correct names are unknown to Plaintiff at this time or their identities as proper party defendants are unknown to Plaintiff at this time, but will be substituted by amendment when ascertained

8.     Allen, The Allen, Walmart, and Fictitious Parties A, B, C, D, E, and F are collectively referred to hereinafter as "Defendants."

## JURISDICTION AND VENUE

9.     The preceding paragraphs are hereby realleged and incorporated herein.

10.     Given the amount in controversy and the nature of claims plead *infra*, this Court has subject matter jurisdiction over this matter.

11.     This Court has personal jurisdiction over Defendants.

12.    Pursuant to *W. Va. Code* 56-1-1 venue is proper in this Court with respect to Defendants as this is the county in which a substantial part of the events which have given rise to the claims, pleaded *infra*, occurred.

## FACTUAL BACKGROUND

13.    The preceding paragraphs are hereby realleged and incorporated herein.

14.    Brandon Mitchell is an experienced archer, was an avid bow hunter, and has shot competitive archery as well.  He was active in the sport of archery since he was about 12 years old up until the date of the incident made the basis of this matter.  By the date of the injury described in greater detail below, he had shot countless arrows without incident.  He worked as an underwater industrial welder.

15.    Plaintiff has a Bowtech Archery Diamond compound bow (the "Bow").   The bow was purchased new from Cabela's around 2019.

16.    A few weeks before the incident, Plaintiff purchased six new Allen and/or The Allen Krypto Arrows ("Arrows") from a Walmart in Quincy, West Virginia.  The Arrows were designed, manufactured, distributed and/or sold by Defendants that owned, maintained, serviced, manufactured, designed, transported, marketed or were otherwise responsible for the Arrows.

17.    The Arrows were not stored by Walmart in the correct way and/or a climate-controlled environment.

18.    The Arrows were designed, manufactured, distributed, and/or sold by Defendants that owned, maintained, serviced, manufactured, designed, transported, marketed or were otherwise responsible for the Arrows.

19.    While Plaintiff had shot the arrows prior to the date of the incident, he always performed inspections prior to shooting carbon arrows.  In addition, he always stored his bows and

arrows in a climate-controlled environment.

20.     On July 24, 2022, Plaintiff had been shooting the Arrows for about ten minutes. He performed a visual test, flex test, and ran his fingers along the Arrow to check for any cracks, fraying, or other problems. He used a whisker biscuit trigger on his bow.

21.     When Plaintiff shot the subject Arrow, it exploded upon release and the fragmented pieces entered into his right wrist and hand.

22.     Plaintiff immediately went to an emergency room at CAMC General Hospital in Charleston, West Virginia.   Medical professionals performed a debridement of his wound and he was referred to a hand surgeon for further treatment, which included surgery and therapy.

23.     As a result of the injury caused by the shattered Arrow shaft, Plaintiff has suffered extreme and permanent nerve damage to his wrist and hand.

24.     As a direct and proximate result of the Arrow breaking into pieces, Plaintiff has suffered scarring, loss of enjoyment of life, lost wages, future lost wages and a loss or impairment of his future earning capacity.

25.     As a direct and proximate result of the Arrow breaking, Plaintiff has incurred substantial medical expenses to obtain the necessary care and treatment for his injuries including, but not limited to, emergency car and transportation, medical procedures and medication.

26.     As a direct and proximate result of the Arrow breaking, Plaintiff may be required to spend additional amounts on future medical treatment to be proved with reasonable certainty at trial.

**CLAIMS FOR RELIEF**

**<u>First Claim</u>**

**Strict Liability**

27.     The preceding paragraphs are hereby realleged and incorporated herein.

28.     At all times relevant to this action, Defendants were engaged in the business of researching, developing, designing, formulating, fabricating, testing, manufacturing, producing, processing, assembling, inspecting, marketing, labeling, promoting, packaging, advertising for sale, selling or otherwise placing into the stream of business the Arrows, and/or its component parts, within the State of West Virginia and throughout the United States.

29.     Prior to the Arrow breaking on July 24, 2022, the Arrow was in substantially the same condition as it was when it left the control of Defendants that intended and designed the Arrow shafts to be cut to the appropriate length for the bow to be used and to be tipped with a suitable point.  Plaintiff did not alter the Arrow from the condition in which he purchased it from Defendants.

30.     At the time the Arrow left the control of Defendants, and at the time Plaintiff was injured, the Arrow was in a defective condition and unreasonably dangerous when put to a reasonably-anticipated use.

31.     At the time the Arrow left the control of Defendants and at the time Plaintiff was injured, the Arrow was unreasonably dangerous when put to a reasonably-anticipated use without knowledge of its characteristics.

32.     The Arrow was unreasonably dangerous to Plaintiff and other consumers or users and was defective in its design and/or manufacture because it snapped into separate pieces during the course of normal use of the product and lacked adequate warnings regarding its use.

33.     Defendants knew or should have known that the Arrow would be used without inspection for defects and represented it could be safely used and would be fit for the ordinary purposes for which it was purchased.

34.     At the time of the events described herein, the Arrow and Bow were being used by

Plaintiff in a reasonably-foreseeable manner anticipated and intended by Defendants.

35.    The Arrow directly and proximately caused or contributed to cause injury to Plaintiff.

36.    The Arrow was defective and unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

37.    As a direct and proximate result of the Arrow's defective condition as existed when sold, Plaintiff has incurred, and will continue to incur, medical, hospital and related expenses, pain and suffering and severe mental anguish.

38.    As a direct and proximate result of the Arrow being sold without adequate warnings, Plaintiff has suffered, and will continue in the future to suffer, severe and serious physical and emotional injury and resulting damages in an amount to be ascertained according to proof at the time of trial and in excess of the jurisdictional limit of this Court.

39.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has sustained and will in the future sustain loss of earnings, loss of earning capacity, and other economic damages according to proof at the time of trial.

40.    Accordingly, Plaintiff seeks, and is entitled to the relief requested against Defendants.

### Second Claim

### [Negligence, Recklessness and/or Wantonness]

41.    The preceding paragraphs are hereby realleged and incorporated herein.

42.    At all relevant times, Defendants had a duty to properly research, design, formulate, test, manufacture, produce, process, assemble, inspect, maintain, market, label, distribute, prepare

6

for use, sell and adequately warn of the risks and dangers of the Arrow, including a duty to assure that such products did not cause customers or handlers of their product to suffer injury.

43. At all relevant times mentioned, Defendants breached their duty to Plaintiff, and were negligent, reckless and/or wanton in researching, designing, formulating, testing, maintaining, manufacturing, producing, processing, assembling, inspecting, marketing, labeling, distributing, preparing for use, selling, renting, leasing, maintaining, and repairing, and failing to adequately warn of the risks and dangers of the Arrow in that they:

a. Failed to use ordinary care in designing and manufacturing the Arrow so as to avoid the aforementioned risks to Plaintiff specifically and the public generally;

b. Failed to accompany the Arrow with proper warnings regarding the possible hazards associated with the use of such products and of the severity of possible injuries;

c. Failed to conduct adequate product testing and post-marketing surveillance to determine the safety and hazards associated with using the Arrow;

d. Failed to warn Plaintiff specifically and the public generally, either directly or indirectly, orally or in writing, about the likelihood and potential hazards that can occur from using the Arrow;

e. Failed to include or provide adequate warnings about the hazards associated with using the Arrow that would alert the public generally and Plaintiff specifically to the potential risks, and the nature, scope, and severity of any serious hazards associated with using the Arrow;

7

f. Continued to promote the desirability and safety of the Arrow, while providing little or no warnings about the risk of serious injuries associated with using the Arrow to the public generally and to Plaintiff specifically;

g. Failed to adequately test and/or warn about the possible serious hazards associated with the Arrow including the possibility of the Arrow shattering; and/or

h. Delayed warnings of and then failed to provide adequate warnings to the public generally and to Plaintiff specifically about the serious injuries and hazards associated with the Arrow, which may have dissuaded the public generally and Plaintiff specifically from purchasing a defective product.

44. As a further direct, proximate and legal result of the negligence, recklessness and/or wantonness of Defendants as alleged herein, Plaintiff has incurred and will continue to incur medical, hospital and related expenses, pain and suffering, and severe mental anguish.

45. As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff has sustained and will in the future sustain loss of earnings, loss of earning capacity, and other economic damages according to proof at the time of trial.

46. As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff has suffered and will continue to suffer severe and serious physical and emotional injury resulting in damages in an amount to be ascertained according to proof at the time of trial and in excess of the jurisdictional limit of this court.

47. Accordingly, Plaintiff seeks, and is entitled to, the relief requested against Defendants.

## **Third Claim**

### **[Breach of Express Warranty]**

48.     The preceding paragraphs are hereby realleged and incorporated herein.

49.     At all relevant times, Defendants expressly warranted to Plaintiff, and to the public generally, by and through statements made by Defendants or their authorized agents or sales representatives, orally and/or in publications, package inserts, or other written materials, that the Arrow was safe, effective, and proper for its intended use, throughout the course of that use by Plaintiff specifically and the public generally.

50.     In utilizing the Arrow, Plaintiff relied on the skill, judgment, representations and foregoing express warranties of Defendants.  Said warranties and representations were false in that the Arrow was not safe and was unfit for the use for which it was intended.

51.     As a direct, proximate and legal result of the foregoing breach of express warranties by Defendants, Plaintiff has incurred and will continue to incur medical, hospital and related expenses, pain and suffering and severe mental anguish.

52.     As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff has sustained and will in the future sustain loss of earnings, loss of earning capacity, and other damages according to proof at the time of trial.

53.     As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff has suffered and will continue to suffer severe and serious physical and emotional injuries resulting in damages in an amount to be ascertained according to proof at the time of trial.

54.     Accordingly, Plaintiff seeks, and is entitled to, the relief requested against the Defendants.

## Fourth Claim

### [Breach of Implied Warranty]

55.     The preceding paragraphs are hereby realleged and incorporated herein.

56.     Prior to the time that the aforementioned Arrow was utilized by Plaintiff, Defendants impliedly warranted to Plaintiff and to his agents and to the public generally that the Arrow was of merchantable quality and safe and fit for the use for which it was intended.

57.     Plaintiff was and is unskilled in the research, design, and manufacture of the Arrow, and reasonably relied entirely on the skill, judgment, and implied warranty of Defendants in researching, designing, manufacturing, marketing the products and training the purchaser of said products.

58.     The Arrow manufactured and sold by Defendants was neither safe for its intended use nor of merchantable quality as warranted by Defendants in that it had dangerous propensities when put to its intended use and would cause serious injuries to Plaintiff.

59.     As a direct, proximate and legal result of the foregoing breach of implied warranties by Defendants, Plaintiff has incurred and will continue to incur medical, hospital and related expenses, pain and suffering and severe mental anguish.

60.     As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff has sustained and will in the future sustain loss of earnings, loss of earning capacity, and other damages according to proof at the time of trial.

61.     As a further direct and proximate result of the acts and omissions of Defendants, Plaintiff has suffered and will continue to suffer severe and serious physical and emotional injury resulting in damages in an amount to be ascertained according to proof at the time of trial.

62.     Accordingly, Plaintiff seeks, and is entitled to, the relief requested against Defendants.

## **PRAYER**

WHEREFORE, Plaintiff prays that the Court:

1.      Grant him a jury trial of the issues in this case;

2.      Declare Defendants acted negligently, recklessly and/or wantonly and that the products at issue breached both express and implied warranties and/or the products were negligently designed and/or manufactured, were accompanied by inadequate safety warnings and/or training, were accompanied by inadequate safety features or was accompanied by inadequate and overly-complicated instructions and was used and/or operated in a negligent, reckless and/or wanton fashion by Defendants;

3.      Award compensatory damages to Plaintiff against Defendants for both past and future medical expenses, lost wages, pain and suffering mental anguish and all other, proven compensable injuries;

4.      Award punitive damages to Plaintiff against Defendants;

5.      Award costs, including a reasonable attorney fee, and interest as allowed by law; and

6.      Grant such other, further and different relief, including equitable, that the Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL OF ALL ISSUES SO TRIABLE.**

> **BRANDON MITCHELL**
> Plaintiff
> By Counsel

s/ Kristina Thomas Whiteaker

_____

Kristina Thomas Whiteaker (State Bar No. 9434)
THE GRUBB LAW GROUP, PLLC
1114 Kanawha Boulevard, East
Charleston, WV  25301
304-345-3356 (telephone)
304-345-3355 (facsimile)

D. Anthony Mastando  (*pro hac vice* application forthcoming)
Eric J. Artrip  (*pro hac vice* application forthcoming)
MASTANDO & ARTRIP, LLC
301 Holmes Ave. NE, Suite 100
Huntsville, AL 35801
256-532-2222 (telephone)
256-513-7489 (facsimile)